IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RODNEY RUDOLPH d/b/a "R" ENTERPRISE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Act. No.: 2:19-cv-380-ECM (WO) |
| DAVID KING et al., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.     Introduction**

On April 30, 2019, the Plaintiff filed suit against the Defendants in the Circuit Court of Montgomery County, Alabama. The Plaintiff asserts various claims against the Defendants arising out of a May 2017 agreement between the Plaintiff and Defendants to set up mobile homes. (Doc. 1-1, at 3). In connection with his work setting up mobile homes for the Defendants, the Plaintiff alleges that he submitted over $150,000.00 worth of invoices, yet the Defendants only issued $34,000.00 in payment. *Id.* Moreover, the Plaintiff alleges that the Defendants made statements that induced him to continue working on the mobile homes despite the outstanding invoice balance. *Id.* Specifically, the Plaintiff contends that Michelle Belcher, an employee of the Defendants and a named defendant in the instant case, made copies of the outstanding invoices and assured the Plaintiff that he would be paid for his work. *Id.* at 4. The Plaintiff alleges that he relied on Belcher's statement and performed additional work on the mobile homes. *Id.* at 3. According to the Plaintiff, the

Defendants stopped all payments under the agreement in September of 2017. *Id.* at 4. Based on these allegations, the Plaintiff asserts claims against the Defendants for breach of contract, fraud, fraudulent suppression, negligence, and wantonness. *Id.* at 5-7.

On June 3, 2019, the Defendants filed a notice of removal in the United States District Court for the Middle District of Alabama. (Doc. 1). The Defendants founded their notice of removal on diversity jurisdiction, alleging that the Plaintiff fraudulently joined non-diverse defendant Belcher because "there is no possibility that the Plaintiff can establish a cause of action against her." *Id.* at 6.

On July 3, 2019, the Plaintiff filed a motion to remand. (Doc. 9). In his motion, the Plaintiff contends that Belcher has not been fraudulently joined, thus showing a lack of diversity of citizenship in this case. *Id.* at 2. For the reasons that follow, the Court concludes that the motion to remand is due to be granted.

## II. Jurisdiction

Defendants FSI Evergreen Estates Property LLC, Meritus Communities, LLC, Meritus Property Management LLC, and Michelle Belcher (the "Defendants")[1] assert that removal jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446 because the

---

[1] David King, a named defendant in the instant case, also resides within Alabama. (Doc. 1-1, at 1). The Plaintiff, however, failed to properly serve King with a copy of the complaint by the time the Defendants filed their notice of removal. (Doc. 1-5). In fact, the Plaintiff, by his own admission, states that he failed to serve King with a copy of the complaint. (Doc. 9 at 5). Thus, the Court will not consider King's Alabama domicile for the purposes of determining complete diversity. *North v. Precision Airmotive Corp.*, 600 F.Supp.2d 1263, 1270 (M.D. Fla. 2009) (finding that "in a complete diversity case such as this one, a non-forum defendant that has not yet been served may remove a state court action to federal court under Section 1441(b) *notwithstanding the fact that the plaintiff has already joined – but not yet served – a forum defendant*.") (emphasis added).

parties are completely diverse and the amount in controversy exceeds $75,000. The Plaintiff, Rodney Rudolph, disagrees and moves to remand, asserting that the Court lacks subject matter jurisdiction because the parties are not completely diverse.

### III. Standard of Review

"Federal Courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilley & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). In light of their limited jurisdiction, federal courts are "obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Charon-Bolero v. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005). When jurisdiction turns on removal, "federal courts are directed to construe removal statutes strictly" and "all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Moreover, "in evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)).

### IV. Discussion

*A. Fraudulent Joinder Standard*

A state court defendant may remove an action based on either federal question or diversity jurisdiction. *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). Removal founded on diversity jurisdiction requires complete diversity between the parties.

3

*Id*. If complete diversity between the parties does not exist, then the district court must remand the case to state court. *Id*.

However, an exception to the complete diversity requirement exists "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction . . .." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). This exception, known as "fraudulent joinder," requires the district court to "ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Id*.

A removing party may establish fraudulent joinder in any one of three ways: first, "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; second, "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; and third, "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.

Regarding the first type of fraudulent joinder, the only type at issue in this case, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a [reasonable] *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id*. (emphasis in original). Moreover, "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts

4

submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting *Pacheco de Perez*, 139 F.3d at 1380).

Additionally, "[t]he proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b).'" *Id.* at 1322-23 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). Thus, "the district court must 'resolve all questions of fact . . . in favor of the [party seeking remand].'" *Id.* at 1323 (quoting *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)). The fraudulent joinder standard places a "heavy burden" on the removing party to prove by clear and convincing evidence that the Plaintiff's claims have no possibility of success. *Crowe*, 113 F.3d at 1538.

*B. Fraudulent Joinder Analysis*

The Defendants have failed to meet their heavy burden of proving, by clear and convincing evidence, that the Plaintiff's fraudulent suppression claim has no possibility of success in state court.[2] Accordingly, the Court concludes that this case must be remanded to the Circuit Court of Montgomery County, Alabama.

To succeed on a fraudulent suppression claim under Alabama law, a plaintiff must show: "(1) that [the defendant] had a duty to disclose an existing material fact; (2) that [the defendant] suppressed this material fact; (3) that [the defendant's] suppression of this fact induced [the plaintiff] to act or refrain from acting; and (4) that [the plaintiff] suffered actual damage as a proximate result." *State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834,

---

[2] The Court only addresses the fraudulent suppression claim because it is dispositive of the remand issue.

837 (Ala. 1998). Moreover, "[a] duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case." Ala. Code § 6-5-102 (1975).

When determining whether a duty to disclose arose from the "particular circumstances" of the case, Alabama courts look to "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain that fact; (5) the customs of the trade; and (6) other relevant circumstances." *State Farm Fire & Cas. Co.*, 729 So.2d at 842-43. In light of these factors, "each case must be individually examined to determine whether a duty of disclosure exists; a rigid approach is impossible, and indeed, the words of [Ala. Code § 6-5-102] counsel flexibility." *Trio Broadcasters, Inc. v. Ward*, 495 So.2d 621, 624 (Ala. 1986) (citations omitted).

In the instant case, the allegations in the Plaintiff's complaint, while sparse, create at least a possibility of his fraudulent suppression claim succeeding in an Alabama state court. The Plaintiff relies on the following factual allegations to support his fraudulent suppression claim against Belcher:

> 13. The Defendants, including David King and Michelle Belcher, through its agents, servants and employees made statements to entice the Plaintiff to perform the work, which he did.
>
> ∗∗∗
>
> 18. The Defendant, Michelle Belcher, replaced Evette (last name unknown). Defendant Michelle Belcher made a copy of all outstanding invoices and stamped the copies. Defendant Belcher assured Plaintiff Rudolph that he would be paid and to continue working.
>
> 19. The Defendants [sic] statements that the Plaintiff would be paid for his work were false, misleading, and not true.

6

> 20. The Plaintiff relied upon the false, misleading statements of the Defendants to his detriment and has suffered damages. (Doc. 1-1, at 3-4).

Based on these allegations, the Court first determines that a colorable basis exists for the claims that Belcher had a duty to disclose under the "particular circumstances" of this case. Specifically, Belcher, as an employee of the Defendants, likely had more knowledge than the Plaintiff regarding the Defendants' ability to pay the invoices; the Defendants' ability to pay carried significant value for the Plaintiff; and the Plaintiff did not have an opportunity to ascertain whether the Defendants could pay the outstanding invoices. *See Standifer v. Best Buy Stores, L.P.*, 364 F.Supp.3d 1286, 1301 (N.D. Ala. 2019) (finding that the plaintiff satisfied the "particular circumstances" test for her fraudulent suppression claim even though the claim failed in other respects). Moreover, the Plaintiff's allegations indicate that but for Belcher's statements about the Defendants' ability to pay, he would not have continued to perform under the contract.

Next, the Defendants argue that in the portions of the Complaint describing Belcher's actions, the Plaintiff's "use of the word 'would' indicates the alleged statement references a future act, making it an allegation of promissory fraud and not fraudulent misrepresentation or fraudulent suppression." (Doc. 22 at 5). Moreover, the Defendants contend "[i]n order to properly plead a promissory fraud claim, in addition to the standard elements of a claim for misrepresentation, a plaintiff must allege two additional elements, that: (1) at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (2) that the defendant had an intent to deceive." *Id*. at 7. According to the Defendants, because the Plaintiff failed to allege these two additional elements of

promissory fraud, the claims against Belcher have no possibility of success. The Court disagrees.

Another fraudulent joinder case from this district, *Bedford v. Connecticut Mut. Life Ins. Co.*, 916 F.Supp. 1211 (M.D. Ala. 1996), proves instructive. In *Bedford*, the plaintiff alleged that "[the defendants], while acting as agents of Connecticut Mutual Life Insurance Company, fraudulently represented to him that the insurance policy in question . . . *would* be paid-in-full in six years from the time of purchase." *Id*. at 1212 (emphasis added). Further, the plaintiff alleged "that the [defendants] had a duty to disclose that the disputed policy *would* not be paid-in-full in six years and *would* require premium payments for the life of the policy." *Id*. (emphasis added). Based on these allegations, the plaintiff asserted a fraudulent suppression claim against the defendants. Despite the presence of the word "would" in the pleadings, the district court found that the plaintiff's allegations created "a possibility that a state court would find that the plaintiff's complaint states a cause of action for fraudulent suppression against the [defendants]." *Id*. at 1216. Accordingly, the district court found the defendants' fraudulent joinder argument unpersuasive and granted the motion to remand.

*Bedford* bears a striking resemblance to the case at hand. Like *Bedford*, the Plaintiff asserts a fraudulent suppression claim against Belcher based on her statements that the Defendants "would" pay the outstanding invoice balance. The mere existence of the word "would" in the complaint does not foreclose the possibility of the Plaintiff stating a fraudulent suppression claim against Belcher in state court. Thus, the Defendants' attempt

8

to transform the Plaintiff's fraudulent suppression claim into a promissory fraud claim falls short.

Finally, the Defendants appear to argue that the Plaintiff's fraudulent suppression claim fails to satisfy the heightened pleading standard that ALA. R. CIV. P. 9(b) imposes. (Doc. 22 at 7-8). While it is true that the complaint leaves open the question of whether the Plaintiff plead with particularity the time and place of the alleged fraudulent suppression, the Court's job "is not to gauge the sufficiency of the pleadings in this case." *Henderson,* 454 F.3d at 1284 (reversing the district court's denial of the motion to remand because there existed a possibility that the plaintiff asserted a colorable claim for tolling under Alabama law); *see also Boyd Bros., Inc. v. Liberty Mut. Ins. Co.*, 2009 WL 1395437 (M.D. Ala. 2009) (granting plaintiff's motion to remand and stating "[t]he allegations, while not a template for precise pleading, appear to satisfy the standard pronounced in *Henderson*."); *Davis v. Hillman Group, Inc.*, 2017 WL 3313999 (S.D. Ala. 2017) (stating "this Court will not evaluate the sufficiency of the Plaintiffs' pleading of their misrepresentation claim and defers to the sound judgment of the [state court].").

Moreover, "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson*, 454 F.3d at 1284. Thus, the Court declines to measure the sufficiency of the Plaintiff's pleadings in this case.

## V. Conclusion

9

Accordingly, because the Defendants have failed to carry their heavy burden of demonstrating that the Plaintiff's fraudulent suppression claim has no possibility of success in state court, it is

ORDERED that the Plaintiff's Motion to Remand the case to the Circuit Court of Montgomery County (doc. 9) be and is hereby GRANTED.

The Clerk of the Court is DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Montgomery County, Alabama.

DONE this 17th day of October, 2019.

/s/Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE